**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LINDA ALDRIDGE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  06 C 352 |
| | ) |
| **FOREST RIVER, INC.,** | ) |
| **SPECIFIC CRUISE SYSTEMS, INC.** | ) |
| | ) |
| Defendants. | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendants Specific Cruise Systems, Inc.("Specific Cruise Systems") and Forest River, Inc. ("Forest River") have moved to bar the testimony of plaintiff Linda Aldridge's ("Aldridge") expert witness, James Des Jardins ("Des Jardins"), pursuant to Federal Rule of Evidence 702. Additionally, Specific Cruise Systems has moved for summary judgment on all of Aldridge's claims against it. For the reasons stated herein, defendants' motions to bar are granted in part and denied in part, and Specific Cruise System's motion for summary judgment is granted in part and denied in part.

I.

Aldridge's four-count complaint alleges claims for strict liability and negligence against each defendant. Aldridge alleges that, on January 20, 2004, she was descending the steps of her recreational vehicle ("RV") when the step controller

retracted, causing her to fall and sustain injuries.  The RV was manufactured by Forest River.  The step controller was manufactured by Specific Cruise Systems.

II.

Des Jardins is a retired professional engineer who currently works as a forensic engineer in litigation matters.  He authored a report, in which he provided his opinion that Aldridge's fall "was proximately caused by design and/or manufacturing defects" in the Specific Cruise Systems step controller and the Forest River RV due to the following: (1) the defect(s) "caused the steps to retract without a legitimate initiating signal and/or the step controller's acceptance of a false electrical signal[;]" and (2) the lack of warnings at or near the door as well as in the Forest River RV Manual or the Specific Cruise Systems Owners Manual.  In his deposition, Des Jardins testified that it is his opinion that "electronic or electrical noise" (a "spike") caused the steps to retract inadvertently.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony

> is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. For expert testimony to be admitted under Rule 702, the movant must establish that the testimony is both reliable and would assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993); *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007). The primary purpose of Rule 702 is to avoid confusing and unreliable expert testimony. *See Daubert*, 509 U.S. at 592. Nevertheless, "[t]he rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1150 (N.D. Ill. 2001) (quotation omitted). Cross examination and the presentation of contrary evidence are the "traditional and appropriate means" of attacking expert testimony. *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

In analyzing the reliability of expert testimony, I must determine whether the expert is qualified in the relevant field and examine the expert's methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 153 (1999)).  An expert whose knowledge in an area is based on practical experience, as opposed to academic or technical training, may be qualified to render an opinion. *See id.  Daubert* set forth several non-exclusive factors to aid the inquiry into the reliability of a proffered expert's methodology as follows: (1) whether the proffered theory can be, and has been, tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been evaluated in light of the known, or potential, rate of error; and (4) whether the theory has been accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *Winters*, 498 F.3d at 742.

### A.  Qualifications

At the outset, Specific Cruise Systems and Forest River challenge Des Jardins' qualifications.  Essentially, defendants contend that Des Jardins is not qualified because he is not an electrical engineer, but he has opined that the alleged step controller malfunction was caused by an electrical problem. Defendants do not, as Aldridge contends, base the motions to bar on the fact that Des Jardins cannot identify the source of the electrical problem that he opines caused the step controller to operate inadvertently.

I conclude that Des Jardins is qualified to offer an opinion as to the alleged defect in the step controller. Des Jardins is not an electrical engineer, but rather a mechanical engineer with more than fifty years of experience. He is not, however, wholly lacking in academic electrical engineering training. Des Jardins testified that he has some expertise and education in electrical engineering. He took some basic electronics courses in the early 1960s. Additionally, Des Jardins possesses some knowledge of electrical engineering based on his practical experience. Defendants dispute this practical knowledge, particularly because Des Jardins testified that the company he ran before he retired used electrical engineering consultants if the subject matter was beyond his level of expertise. But it is not clear that the phenomenon of electronic noise as a cause of inadvertent operation necessarily exceeds Des Jardins' practical expertise. Further, while Des Jardins testified that he has not had experience specifically with RV stair steps, the company he ran before he retired was involved with the design of mechanisms similar to the electrical stair steps at issue in this case. Overall, Des Jardins is sufficiently qualified to offer the opinion that the step controller malfunctioned due to an electrical, as opposed to a mechanical, problem.

## B.  Methodology

Specific Cruise Systems and Forest River also challenge the reliability of Des Jardins' methodology.  Even though Des Jardins qualifies as an expert, he cannot testify if his methodology is unreliable.  Des Jardins' opinions cover the following topics: (1) the alleged failure of the step controller due to design and manufacturing defects; (2) the existence of a safer alternative design; and (3) the failure to warn.  I find Des Jardins' methodology is sufficiently reliable as to the cause of the alleged step controller malfunction, but has not been shown to be sufficient as to alternative design and failure to warn.

First, Des Jardins opines that the step controller malfunctioned as a result of design and manufacturing defects.  Specifically, he asserts that electronic noise from somewhere caused an inadvertent activation of the step controller, which made the steps retract.  He explains that the step controller's susceptibility to electronic noise constitutes a design defect; and that the lack of testing of each individual step controller module for isolation from electrical noise constitutes a manufacturing defect.

Des Jardins bases his opinions, in large part, on documents produced by defendants during discovery, as well as on Aldridge's and her husband's deposition testimony regarding the

circumstances of the accident. He interprets the documents as demonstrating that the step controller device was susceptible to electronic noise. Defendants primarily take issue with Des Jardins' failure to conduct any tests. He testified that he did not perform any testing because he could not replicate the conditions of the accident without the same RV, the same step controller, and the same set of unknown conditions that were present at the time of Aldridge's accident. Defendants also challenge Des Jardins' failure to analyze the step controller circuitry because he was not provided with the necessary documentation. He testified, however, that the lack of such mechanical information does not affect his opinion because the problem with the step controller was electrical in nature. On balance, I find that there is sufficient indicia of reliability to permit Des Jardins to testify regarding his electronic noise opinion. Any inadequacies in his opinion are the proper subject of cross examination.

Second, Des Jardins testified that a safer alternative step controller design exists. He stated that, in order to render the step controller not unreasonably dangerous, it would be necessary to completely isolate or shield the device from anticipable types of electronic noise. The testing of an alternative product design is important in evaluating the reliability of the proposed

expert testimony. *Winters*, 498 F.3d at 742; *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869-70 (7th Cir. 2001); *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535 (7th Cir. 2000). The testimony nevertheless may be reliable, despite a lack of testing, where the expert has adhered to the standards of intellectual rigor demanded in his profession, such as relying on data generated by other researchers, making proper personal observations, or taking other appropriate actions. *Winters*, 498 F.3d at 742-43. The testimony is not reliable, however, if no other method is used to compensate for the failure to test. *Id.* at 743.

Here, Des Jardins neither designed nor tested an alternative step controller. He did not propose the degree to which the step controller should be insulated from electronic noise nor explain how to achieve increased insulation. In fact, Des Jardins concedes that he is incapable of designing such a product. He acknowledges that he is unfamiliar with the types of electronic spikes that could be expected in an RV. He also explains that he would not know how to test for the appropriate levels of isolation. Moreover, Des Jardins undertook no measures to compensate for his failure to create, or test, an alternative design. His opinion is simply that a safer device could be

designed. Des Jardins' alternative design opinion is unsupported and, therefore, barred as unreliable.

Third, Des Jardins also testified that the lack of warnings makes the step controller system unreasonably dangerous. He asserts that there should be written as well as audio or visual warnings. Des Jardins did not formulate the language or suggest the appearance of the visual warning and, in fact, stated that persons in the RV industry are best situated to design such a warning. Moreover, he testified that he would only be able to devise the warnings he suggests by working with a group of people who specialize in the steps and RVs at issue in this case because, as a generalist, he would be prone to overlook certain details that would make the warning less effective. Common sense may dictate that a warning should be given that steps may retract without notice, but, if so, expert testimony on the subject is not needed. *See Conley v. Lift-All Co., Inc.*, No. 1:03-CV-1200-DFH-TAB, 2005 WL 1799505, at *13 (S.D. Ind. July 25, 2005). Regardless, Des Jardins' lack of formulation of a specific warning means that he cannot testify on this subject. *Dhillon*, 269 F.3d at 870; *Bourelle*, 220 F.3d at 535.

### III.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Timmons v. Gen.*

*Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006); Fᴇᴅ. R. Cɪᴠ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A. Choice of Law

In a case based on diversity jurisdiction, Illinois choice of law principles apply. *Casio, Inc. v. S.M.&R. Co., Inc.*, 755 F.2d 528, 530-31 (7th Cir. 1985) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The issue of which state's law to apply only arises when a conflict exists between the various bodies of law and the parties disagree as to which law governs. *See Munch v. Sears Roebuck & Co.*, Nos. 06 C 7023, 07 C 412, 2007 WL 2461660, at *4 (N.D. Ill. Aug. 27, 2007) (Lefkow, J.) (citing *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 605 (7th Cir. 1981)); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors*, No. 06 C 3183, 2007 WL 1560212, at *6 (N.D. Ill. May 29, 2007) (Kendall, J.) (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991)). In tort cases, Illinois courts employ the most significant relationship test to resolve choice of law questions. *Esser v. McIntyre*, 169 Ill. 2d 292, 297-98, 661 N.E.2d 1138, 1141 (Ill. 1996); *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 1031,

738 N.E.2d 964, 971 (Ill. App. Ct. 2000). The contacts to evaluate include: (1) the place of injury; (2) the place of the injury causing conduct; (3) the domicile, residence, place of incorporation, and place of business of the parties; and (4) the place, if any, where the relationship between the parties is centered. *Id.* at 298, 661 N.E.2d at 1141; *Wreglesworth*, 316 Ill. App. 3d at 1031, 738 N.E.2d at 971; *see Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990).

Generally, the two most important contacts are the place of the injury and the place of the conduct causing the injury. *Miller*, 914 F.2d at 978. Courts favor applying the law of the place of the injury unless another state has a more significant relationship to the occurrence or the parties. *Id.*; *see Esser,* 169 Ill. 2d at 298, 661 N.E.2d at 1141; *Wreglesworth*, 316 Ill. App. 3d at 1031, 738 N.E.2d at 971. I must "analyze the contacts' significance to determine which state has the greater interest in having its law applied." *Miller*, 914 F.2d at 979; *see Wreglesworth*, 316 Ill. App. 3d at 1031, 738 N.E.2d at 971 (explaining that court must conduct interest analysis, which involves first isolating issue presented, then identifying relevant policies embraced in conflicting laws, and finally examining contacts and determining which forum has superior interest in having its policies applied).

Specific Cruise Systems argues that a conflict exists between Florida and Texas strict liability law. Specific Cruise Systems further argues that Texas has the most significant relationship to this dispute and, therefore, Texas law governs the strict liability count, consisting of claims for design defect, manufacturing defect, and failure to warn. Specific Cruise Systems contends that no conflict exists with respect to the negligence count and, therefore, Illinois law governs. Aldridge, on the other hand, argues that no conflict exists as to either count, thus warranting the application of Illinois law to the strict liability and negligence claims.

With regards to strict products liability law, Florida and Texas law are the same to the extent that both states have adopted the standard articulated in § 402A of the Restatement (Second) of Torts. *See Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999) (explaining that Florida adopted Restatement's strict products liability standard in *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976)); *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003) (explaining that Texas statute and Restatement (Second) of Torts § 402A govern design defect claims); *see also Caterpillar v. Shears*, 911 S.W.2d 379, 381 (Tex. 1995). Under both Florida and Texas law, a product may be defective by reason of design defect,

manufacturing defect, or inadequate warning. *Jennings*, 181 F.3d at 1255; *Shears*, 911 S.W.2d at 382. In Florida and Texas, a strict products liability plaintiff must prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1258 (11th Cir. 2002); *see Gomez de Hernandez v. New Texas Auto Auction Servs., L.P.*, 193 S.W.3d 220, 225 (Tex. App. Ct. 2006) (explaining that strict products liability plaintiff must prove that: (1) defendant placed product in stream of commerce; (2) product was defective or unreasonably dangerous; and (3) there was causal connection between such condition and injury).

Florida and Texas strict products liability law diverge, however, in two significant respects. First, Texas statutory law also applies to design defect claims. TEX. CIV. PRAC. & REM. CODE § 82.005(a); *see Flock*, 319 F.3d at 236; *Gomez de Hernandez*, 193 S.W.3d at 225. The Texas statute requires a plaintiff in a "products liability action" who is alleging design defect also to prove by a preponderance of the evidence that: (1) there was a safer alternative design; and (2) the defect was a producing cause of the injury. TEX. CIV. PRAC. & REM. CODE § 82.005(a). Florida law imposes no such requirement. Second, Florida law permits the creation of a legal inference, referred to as a

*Cassisi* inference, of product defect when a product malfunctions during normal operation. *McCorvey*, 298 F.3d at 1258 (citing *Cassisi v. Maytag Co.*, 396 So. 2d 1140 (Fla. Ct. App. 1981)). Texas law provides for no such inference.

Because the Florida and Texas strict liability law differ, I must evaluate the relevant contacts to determine which state has the most significant relationship with this action. I consider the following: (1) Florida was the place of the injury; (2) Texas was the place of the injury causing conduct, namely the alleged defective design and/or manufacture of the step controller; (3) Aldridge is an Illinois resident and Specific Cruise Systems is a foreign corporation with its principal place of business in Texas; and (4) there is no state in which the parties' relationship is centered. *See Esser*, 169 Ill. 2d at 298, 661 N.E.2d at 1141; *Wreglesworth*, 316 Ill. App. 3d at 1031, 738 N.E.2d at 971; *Miller*, 914 F.2d at 978. Generally, Florida law is favored as the place of the injury, unless I conclude that another state has a more significant relationship to the occurrence or the parties. *See id.*

I must analyze the significance of the contacts to determine which state has the greatest interest in having its law applied. *Miller*, 914 F.2d at 979; *see Wreglesworth*, 316 Ill. App. 3d at 1031, 738 N.E.2d at 971. First, I consider the issue presented,

which is, in a case where there have been contacts with multiple states, which state's law bears the strongest connection to a products liability claim. With regards to the policies underlying the conflicting laws, Florida law appears to offer more protection to persons injured by products that allegedly suffer from design defects, while Texas appears to afford more protection to manufacturers and sellers of products that are allegedly defectively designed. Finally, I examine the contacts with each state. Aldridge was injured while vacationing in Florida, and also received immediate emergency treatment as well as limited follow-up medical care there. Although the time of the injury was the first occasion on which Aldridge and her husband had vacationed in Florida, subsequently they have returned there for extended visits. Specific Cruise Systems' principal place of business is located in Texas, and it manufactured the step controller there. But the step controller was neither ultimately incorporated into the RV, nor placed into the stream of commerce, in Texas. Aldridge is an Illinois resident, but nothing relating to her or the step controller happened in Illinois. On balance, I conclude that Florida has the most significant relationship to the occurrence and, therefore, Florida law governs the strict liability count.

With regards to negligence, the parties agree that Illinois law applies because the law of Illinois, Florida and Texas is essentially the same.[1]  Therefore, I apply Illinois law to the negligence count.  Negligence requires proof of the following elements: (1) the existence of a duty of care owed by the defendant; (2) a breach of that duty; (3) an injury that was proximately caused by the breach; and (4) damages. *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270, 864 N.E.2d 249, 263 (Ill. 2007).

## B.  Strict Liability

Count III of the complaint alleges that, at the time the step controller left Specific Cruise Systems' control, it was not reasonably safe for its intended use.  Count III further alleges that Aldridge was injured as a result of the step controller's defective condition.  Specific Cruise Systems characterizes the strict liability count as encompassing claims for design defect, manufacturing defect, and failure to warn.  To prevail on a

---

[1]By its terms, the Texas products liability statute applies to negligence claims as well as strict liability claims.  As set forth above, § 82.005(a) imposes additional elements of proof upon a plaintiff in a "products liability action[,]" which is defined to include, *inter alia*, actions sounding in strict tort liability, strict products liability, and negligence. TEX. CIV. PRAC. & REM. CODE § 82.001(2).  Specific Cruise Systems has not raised this as a conflict with Illinois law, which is accurate because Aldridge has not asserted a negligent design defect claim.  Rather, the breaches alleged in Count IV pertain to the negligent manufacture of the step controller.

strict liability claim, Aldridge must prove that (1) the step controller (2) produced by Specific Cruise Systems (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) her injuries. *See McCorvey*, 298 F. 3d at 1258. Under Florida law, an inference of product defect is created based on the step controller's malfunction during its normal operation. *See id.*

First, I deny summary judgment for Specific Cruise Systems as to the strict liability defective design claim. As an initial matter, based on the *Cassisi* inference, this claim withstands summary judgment. In addition, the testimony of Specific Cruise Systems' expert, John DeFino ("DeFino") suggests the existence of a safer design for the step controller. Specifically, DeFino testified that, in the course of implementing certain changes to the step controller in 2000, it was determined that susceptibility to electrical spike could be reduced. According to DeFino, this spike susceptibility reduction ultimately was implemented, but he does not believe it was implemented in the step controller model in Aldridge's RV. Based on DeFino's testimony, a disputed issue of material fact exists as to whether the step controller was defective because it was too susceptible to electrical spike.

Additionally, I deny Specific Cruise Systems' motion for summary judgment as to a strict liability manufacturing defect claim. I find material facts are in dispute as to whether the step controller was defective or unreasonably dangerous. Specifically, apart from the parties' conflicting expert testimony, certain documents present fact questions regarding the manufacturing defect claim that cannot be resolved on summary judgment. First, a warranty repair claim form for Aldridge's RV states "Found RV step controller component failure. As per Forest River replace controller with new made by Kwickee." Specific Cruise Systems dismisses this document as inadmissible hearsay. But, according to Mike Scott, one of the mechanics from Van Land who worked on Aldridge's RV (although he was not the mechanic who wrote that note), the warranty claim form to Forest River is used in the ordinary course of business at Van Land in repairing RVs and would be used by both Van Land and Forest River. In addition, a debit memo from Forest River to Specific Cruise Systems to charge Specific Cruise Systems for the warranty claim for Aldridge's step controller states "Step control board has component failure[.]" Specific Cruise Systems also dismisses this document as inadmissible hearsay. But, according to Paul Pierce, Forest River's Director of Parts, Service, and Warranty, the document was prepared in the ordinary course of business

under his supervision and direction.  As such, both documents fit within the business records exception to the hearsay rule. *See* FED. R. EVID. 803(6).  Based on these documents, a disputed issue of material fact exists as to whether the step controller was defective or unreasonably dangerous.

Finally, I deny summary judgment on a strict liability failure to warn claim.  Although Des Jardins' testimony on this topic was barred, as previously explained, it does not necessarily require expert testimony.  Therefore, this claim survives summary judgment.

## C.  Negligence

Count IV of the complaint alleges that Specific Cruise Systems had a duty to exercise care and caution in manufacturing step controllers.  Count IV further alleges that Specific Cruise Systems breached this duty by: (1) failing to warn Forest River that the step controller would malfunction and retract without warning; (2) failing to properly wire the step controller to prevent unexpected retraction; and (3) failing to ensure that the step controller was operating correctly before selling it to Forest River.  To prevail on a negligence claim, Aldridge must prove:  (1) Specific Cruise Systems owed a duty of care; (2) Specific Cruise Systems breached that duty; (3) Specific Cruise

Systems' breach proximately caused Aldridge's injury; and (4) damages. *Calles*, 224 Ill. 2d at 270, 864 N.E.2d at 263.

First, I grant Specific Cruise Systems' motion for summary judgment as to the negligence claim regarding its failure to warn Forest River that the step controller would retract without warning. Aldridge's complaint asserts a duty owed by Specific Cruise Systems to Forest River and not to her. *See Calles*, 224 Ill. 2d at 270, 864 N.E.2d at 263 (explaining that products liability plaintiff must establish existence of duty of care owed by defendant).

Next, I also grant Specific Cruise Systems' motion for summary judgment as to the negligence claim regarding its failure to properly wire the step controller. Aldridge has provided no evidence that her injury was caused by faulty wiring. On the contrary, based on her own expert's testimony, Aldridge's theory is that she was injured when the step controller retracted inadvertently due to an electronic spike because it was not designed to be insulated from such electrical noise.

Finally, I deny Specific Cruise Systems' motion for summary judgment as to the negligence claim regarding its failure to ensure that the step controller was operating correctly before being sold to Forest River. For the same reasons set forth previously in Section III.B as the basis for denying summary

judgment on the strict liability manufacturing defect claim, construing these facts in the light most favorable to Aldridge, a question of fact exists as to whether the controller was operating correctly when it left Specific Cruise Systems' control.

IV.

For the foregoing reasons, Forest River's and Specific Cruise Systems' motions to bar are granted in part and denied in part. Des Jardins is limited to offering an opinion regarding the cause of the alleged step controller malfunction. Additionally, Specific Cruise Systems' motion for summary judgment is granted in part and denied in part. Summary judgment is granted on the claims in Count IV of negligent failure to warn and negligent failure to properly wire the step controller. Summary judgment is denied as to the claims in Count III of strict liability design defect, strict liability manufacturing defect, and strict liability failure to warn as well as the claim in Count IV of negligent failure to ensure that the step controller was operating correctly.

**ENTER ORDER:**

_Elain E Bucklo_
_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 11, 2007

21