IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA ALDRIDGE,<br><br>    Plaintiff,<br><br>  v.<br><br>FOREST RIVER, INC., a foreign corporation, and SPECIFIC CRUISE SYSTEMS, INC., a foreign corporation,<br><br>    Defendant.<br>_____<br><br>FOREST RIVER, INC., a foreign corporation,<br><br>    Cross-Plaintiff,<br><br>  v.<br><br>SPECIFIC CRUISE SYSTEMS, INC., a foreign corporation,<br><br>    Cross-Defendant. | No. 06 C 352 |

## MEMORANDUM OPINION AND ORDER

Linda Aldridge ("Aldridge") sued defendants Specific Cruise Systems, Inc. ("SCS") and Forest River, Inc. ("Forest River") for injuries she allegedly suffered while descending the steps of her recreational vehicle ("RV") on January 20, 2004. She claims that the step controller unexpectedly retracted and caused her to fall. The RV was manufactured by Forest River, and the step controller was manufactured by SCS. After a trial lasting from December 7 to

December 10, 2009, a jury found in favor of both defendants. Aldridge now seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons explained below, the motion is denied.

## Discussion

**A.   Forest River's Motion in Limine 27**

Federal Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. A new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wisconsin Dept. of Corrs.*, 445 F.3d 971, 979 (7th Cir. 2006) (quotation marks omitted).

Aldridge contends that she is entitled to a new trial because of my December 4, 2009 ruling granting Forest River's Motion in Limine 27, which sought to bar Aldridge from arguing to the jury that the RV was the product at issue in the litigation. As I explained in granting the motion, Aldridge had maintained throughout the case that the *step controller* in the RV was the product on which her suit was based. In opposing the motion in limmine, Aldridge insisted that her intention had been to assert that the entire vehicle was defective. She makes the same claim in

her Rule 59 motion, and the arguments she advances are essentially the same as those she raised previously. I remain unpersuaded.

Aldridge first argues that "[a] clear reading of Paragraph 7 of the Complaint states clearly that the 2004 recreational vehicle contained a step controller that was used to raise and lower the steps to the recreational vehicle. Clearly, allegations were made alerting Forest River, Inc. that plaintiff was complaining that her Georgetown RV was defective." Mot. ¶ 2. The actual language of paragraph 7 -- which Aldridge neglects to quote -- is: "the 2004 Georgetown recreational vehicle contained a step controller that was used to raise and lower steps to the recreational vehicle." Compl. ¶ 7. Quite simply, this statement cannot plausibly be interpreted as claiming that the RV was defective; it states merely that the step controller was part of the RV.

The complaint's other allegations make it abundantly clear that the step controller, not the RV, was the product whose defectiveness was at issue in the litigation. Thus, in Count I, which asserts a claim for strict liability against Forest River, Aldridge claims "[t]hat at the time the 2004 Georgetown recreational vehicle left the control of the defendant, FORREST [sic] RIVER, INC., the RV step controller was not reasonably safe for its intended use of raising and lowering the steps to the recreational vehicle," Compl. (Count I) ¶ 8; "[t]hat on the 20th day of January, 2004, the plaintiff, LINDA ALDRIDGE, was in the

process of descending the steps from the aforesaid 2004 Georgetown recreational vehicle when the RV step controller unexpectedly retracted, thus causing her to fall and causing her severe and permanent injuries," *id.* ¶ 9; and "[t]hat as a direct and proximate result of the defective condition of the RV step controller that was manufactured by the defendant, SPECIFIC CRUISE SYSTEMS, INC., the plaintiff, LINDA ALDRIDGE, sustained severe and permanent injuries," *id.* ¶ 10. Count III, which asserts a strict liability claim against SCS, repeats virtually identical allegations. *See* Compl. (Count III) ¶ 11.[1] In short, in her claims against both defendants, Aldridge unambiguously identifies the step controller as the proximate cause of her injuries and as the product whose defectiveness is at issue in the litigation.

Aldridge also cites language from the report of Richard W. Kragh ("Kragh"), Forest River's expert, in support of her claim that the suit was based on the RV instead of (or in addition to) the step controller. In particular, she points to Kragh's statement "that the step system, including but not limited to the SCS Step Controller, on the 2004 Forest River Georgetown motor home having VIN 1FCNF53S530A05374 was not unreasonably dangerous and defective as used and did not fail in a manner causative of the

---

[1]Although Aldridge's complaint originally asserted four causes of action, only Counts I and III remained at the time of trial. Aldridge dismissed Counts II and IV, which asserted claims for negligence against Forest River and SCS, respectively, on August 4, 2009 (Doc. 103).

-4-

accident on January 20, 2004." Pl.'s Ex. 1. According to Aldridge, this shows that "plaintiff's own expert was not limiting his opinion to the step controller only, but was saying that the step system itself was not failing, which is all plaintiff was required to do in this case, as Florida law does not require plaintiff to prove a specific defect if the product malfunctions during ordinary use and operation." Motion at ¶ 3. Aldridge freights Kragh's comment with far too much importance. The reference to the RV here is incidental and simply does not support the claim that it was the RV's defectiveness that formed the basis for Aldridge's complaint. Indeed, as Forest River points out, in the introduction to his report, Kragh explains that his assignment was "to evaluate the operation of the SCS Step Controller installed on a Forest River Georgetown motor home and to determine its involvement, if any, in the subject accident." Forest River Resp. Ex. 3 (Doc. 276-3). To the extent that Kragh incidentally opined on matters beyond the step controller, that would not establish Aldridge's claim that the RV was the product at issue in the litigation.

Next, Aldridge argues that as a matter of Florida law, she should not have been limited to arguing that the step controller was defective. In particular, she relies upon *Cassisi v. Maytag Co.*, 396 So.2d 1140, 1148 (Fla. Dist. Ct. App. 1981), which held that "if a product malfunctions during normal operation, a legal

inference arises that the product was defective and the injured plaintiff thereby establishes a *prima facie* case for jury consideration.[2] *Caswell v. Ford Motor Co.*, No. 803CV2182T30MSS, 2005 WL 3372882, at *3 (M.D. Fla. Dec. 12, 2005). According to Aldridge, she was not required under *Cassisi* to prove whether it was the step controller or the RV that caused her injury, and that, consequently, she should have been permitted to argue that the RV was the problem.

This argument rests on a misunderstanding of *Cassisi*. In particular, Aldridge conflates (1) the question of which product is alleged to be defective in the litigation with (2) the question of how the defectiveness of that product is to be established. *Cassisi* speaks to the second of these questions, not the first. Before *Cassisi* comes into play, it is first necessary to identify the product at issue in the litigation. Once that determination has been made, *Cassisi* absolves the plaintiff from having to show precisely what caused the product in question to malfunction (assuming that the malfunction occurred during normal operation). As explained above, the product at issue in the instant case is the

---

[2] In an earlier ruling, I determined that Florida law applies to the parties' claims. *See Aldridge v. Forest River, Inc.*, No. 06 C 352, 2007 WL 6925693, at *6 (N.D. Ill. Dec. 11, 2007).

step controller. By invoking *Cassisi*, Aldridge could potentially avoid the burden of showing exactly what went wrong with the step controller (e.g., a wiring defect, a loose screw, a damaged lever, etc.); but *Cassisi* does not permit Aldridge to change her theory about whether the RV as a whole, instead of the step controller, is the product for whose defectiveness she seeks to hold the defendants liable.

Aldridge goes on to assert that "Forest River had been defending theories of warning, negligence, electrical surges causing the step system to retract unexpectedly due to the failure of noise suppression systems on the 2004 Georgetown RV," and that "[t]hese were all discussed extensively during depositions and have been referenced on numerous occasions during the briefs on the motions *in limine* as well as the motions for summary judgment." Mot. ¶ 3. Unfortunately, Aldridge fails to cite to any particular brief, motion, or deposition in support of this claim. Moreover, to the extent that electrical surges and other causes have been discussed throughout the course of the litigation, it does not follow that the RV rather than the step controller should be regarded as the product at issue in the suit. Here Aldridge seems again to confuse two separate issues: (1) whether she should have been allowed to argue that the RV caused the step controller to malfunction, with (2) the question of whether she should have been allowed to argue to the jury that the RV, and not the step

-7-

controller, was the defective product for which the defendants should have been held liable.  It is possible, for example, that the RV's noise suppression system somehow caused the steps to retract.  While this might explain why the step controller failed to properly deploy, the fact would remain that the step controller, and not the RV, is the product whose defectiveness is ultimately at issue in the suit.

In sum, based on her complaint, and based on the way in which the suit was prosecuted from its inception, Aldridge indicated that the step controller was the sole basis for her claims.  Until shortly before trial, the RV's role remained entirely peripheral.  It therefore would have been unfair to give her permission, particularly at such a late date, to argue that the RV was in fact the defective product in question.  It was for this reason that I granted Forest River's Motion in Limine 27 in the first place.  I remain unpersuaded that the ruling was erroneous.

**B.   Motion to Amend**

After I granted Forest River's Motion in Limine 27, Aldridge moved to amend her complaint on the eve of trial so as to advance the theory that the RV was defective because the stairs did not operate as intended during normal use.  I denied the motion for largely the same reasons as those discussed above: the defendants had litigated the case for several years on the understanding that the product forming the basis for Aldridge's complaint was the step

-8-

controller.  Since Aldridge sought to amend immediately before the trial, Forest River and SCS would have had no time to prepare a meaningful defense.

Nevertheless, Aldridge argues that denying her leave to amend "compounded" the error of granting Forest River's motion in limine. She maintains that SCS would not have been prejudiced by the amendment because it would have been found liable "only if the step controller were found to be bad."  Pl.'s Mot. 4-5.  Without further elaboration, this terse remark is unclear and unpersuasive; and even if the argument were correct, it still would not address the prejudice that Forest River would face due to such a belated amendment.

Aldridge also argues that the complaint was "constructively amended" during the course of the litigation to include the claim that the RV was defective.  As Judge Posner has explained, the notion of "constructive amendment" in this context is a misnomer. *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005) ("When issues not mentioned in the complaint (whether originally or by amendment) are nevertheless litigated with the consent of the parties, the complaint is not 'constructively amended'; it is simply an irrelevance so far as those issues are concerned.").  It appears that Aldridge wishes to rely upon Federal Rule 15(b)(2), which states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated

> in all respects as if raised in the pleadings. A party may move -- at any time, even after judgment -- to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2).

As the Seventh Circuit has explained, the question "whether the issue which is the subject of the tendered amendment was actually tried by the express or implied consent of the parties . . . rests within the district court's discretion." *Ippolito v. WNS, Inc.*, 864 F.2d 440, 456 (7th Cir. 1988). "A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." *Id.* (quotation marks and brackets omitted). "To determine whether there was express or implied consent, [the court] must ascertain whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir. 1992) (quotation marks omitted).

Aldridge first argues that "[a] clear review of Forest River's motion [for summary judgment] indicates that they are defending the Forest River 2004 Georgetown RV as being defective, including complaints of lack of warning, lack of noise suppression systems, step systems not operating as intended, as well as the step

controller malfunctioning." Mot. ¶ 6.[3]  Once again, however, Aldridge fails to offer any specific citation to record evidence of any kind in support of her claim.  And in point of fact, the defendants' summary judgment brief belies Aldridge's argument.  None of the arguments put forth in the brief is devoted to any issue other than whether the step controller was defective.  There can be no question that the defendants could have presented additional evidence regarding the RV if they had known sooner of Aldridge's proposed amendment.  Clearly, therefore, the defendants did not consent to litigating the issue of the RV's defectiveness.

Aldridge also argues that the complaint was amended by testimony offered at trial.  In particular, she argues that "there was testimony in the record that mis-installation of the step assembly was one of the variables that could cause a step controller to work properly on one motor home and not on another."  Mot. ¶ 8.  In addition, she cites the testimony of Forest River's expert, John DeFino, that "electrical problems in the coach can damage any electrical device, including the step control module" and that "he was aware of other step control modules that were

---

[3] In its response brief, Forest River claims that it never filed a motion for summary judgment. Resp. at 7. However, the motion for summary judgment filed on November 11, 2009 indicates that it was brought by both SCS and Forest River. *See* Doc. 227. An earlier motion for summary judgment was brought by SCS. *Aldridge v. Forest River, Inc.*, No. 06 C 352, 2007 WL 6925693 (N.D. Ill. Dec. 11, 2007).  That motion was granted in part and denied in part.  *Id.* at *8.

affected as a result of spike susceptibility." *Id.* ¶ 9. For the reasons already mentioned, this evidence does not form a sufficient basis for holding that Aldridge's complaint was "constructively amended." As set forth above, the key question is whether the defendants consented to litigating the issue of the RV's defectiveness; this in turn requires a determination of whether the defendants could have presented additional evidence if they had known sooner of the substance of Aldridge's desired amendment. Based on the complaint and all of the litigation leading up to the trial, the defendants were given to understand throughout the proceedings that Aldridge sought to hold them liable for the step controller. If they had been given notice that it was instead the RV's defectiveness that formed the basis for her suit, they would undoubtedly have mounted a different defense and presented different evidence. There is no basis for holding that the defendants consented to trying the issue of the RV's effectiveness by virtue of the defense they presented at trial. Aldridge's claim that she should have been allowed to amend her complaint, or that her complaint was in fact amended by the defendants' implicit consent, is without merit.

## Conclusion

For the reasons discussed above, Aldridge's motion for a new trial is denied.

**ENTER ORDER:**

                                    _____
                                      **Elaine E. Bucklo**
                                    United States District Judge

Dated: April 12, 2010